**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CNL HOTELS & RESORTS, INC.,**

                    **Plaintiff,**

**-vs-**                                          **Case No.  6:06-cv-324-Orl-31JGG**

**HOUSTON CASUALTY COMPANY, and**
**LANDMARK AMERICAN INSURANCE**
**COMPANY,**

                    **Defendants.**

_____

# ORDER

This matter comes before the Court on the motion for reconsideration (Doc. 227) filed by

the Plaintiff, CNL Hotels & Resorts, Inc. ("CNL") and the responses filed by Defendant Houston

Casualty Company ("HCC") (Doc. 240) and by Defendant Landmark American Insurance

Company ("Landmark") (Doc. 241).  Familiarity with the underlying facts is assumed.

CNL seeks reconsideration of this Court's order (Doc. 210) (the "Order") denying one of

its several motions for summary judgment (Doc. 143) and granting, in part, summary judgment

motions filed by HCC (Doc. 168) and Landmark (Doc. 169).

In an effort to gin up a conflict with binding precedent, CNL misrepresents the holding of

*American United Life Ins. Co. v. Martinez*, 2007 WL 677729 (11th Cir. Mar. 7, 2007), which

issued one week before the Order.  CNL contends that the case "mandat[es] that the 'last act' or

'execution' of an insurance policy under Florida's *lex loci contractus* rule occurs when <u>the</u>

<u>policyholder</u> signs the insurance application or the last document necessary to complete the

application." (Doc. 227 at 2) (emphasis in original). But *Martinez* "mandates" no such thing. After reciting the basics of Florida choice of law, the *Martinez* court simply noted that "[w]hen the contract deals with an insurance policy, the *locus contractus* is generally the state where the insured executed the insurance application." *Id.* at *13. Reciting such a general proposition is a far cry from insisting on its application in every instance.

CNL also fails to note that in its original motion for summary judgment, it contended that Florida law governed interpretation of the underlying policy for the following reasons (only):

> Here, [CNL]'s principal place of business is located in Orlando, Florida and the [Twin City] Policy was issued for delivery, and actually delivered, in Florida. Moreover, Twin City is licensed in the state of Florida. *See* Best's Reports – Property Casualty, US 2006 Edition, relevant pages attached as Exhibit 3 to the Malone Dec. The [Twin City] Policy also includes riders specific to Florida law, and taxes were paid in connection with the Policy in Florida.

(Doc. 143 at 5 n.5). Obviously, CNL did not mention that it had executed an application in Florida or argue that this act required application of Florida law under the rule of *lex loci contractus*. A motion for reconsideration is not a vehicle for offering theories or evidence that could have been presented in connection with the previously filed motion, unless the movant provides a reason for failing to do so originally (which CNL has not done).[1] *See, e.g.*, *Bryan v. Murphy*, 246 F.Supp.2d 1256, 1259 (N.D.Ga. 2003). And although CNL now takes issue with the evidence upon which this Court relied in concluding that New York law governed interpretation of the policy, CNL did not offer any legitimate legal or evidentiary basis for applying the law of any other state.

---

[1]In its motion for reconsideration, CNL also argues that Florida law governs interpretation of the Twin City Policy because it issued and delivered the checks to pay the premium in this state. (Doc. 227 at 11 n.7). CNL also failed to make this argument in its original motion for summary judgment.

CNL next argues that Florida law must be applied to the Twin City Policy because of a contractual agreement between itself and Twin City as to choice of law.  (Doc. 227 at 12).  This argument is ridiculous on its face, and likely worthy of sanctions.  The "contractual agreement" is not, as CNL implies,[2] a choice-of-law provision in the Twin City Policy.  Rather, it is the *settlement agreement* it entered into with Twin City about three months ago.[3]  CNL's argument that the parties to an action can agree as to the applicable law is both a distortion of precedent and an irrelevance.  None of the case law cited by CNL involves parties entering a separate contract, years after the fact, to make a new choice of law in regard to a pre-existing contract.  More importantly, two of the four original parties to this action have *not* agreed that Florida law governs interpretation of the Twin City Policy.

CNL also argues that reconsideration is warranted because the Court relied on a New York case "that subsequently was <u>reversed</u> on the specific point for which it was cited in the Order." (Doc. 227 at 3) (emphasis in original).[4]  But CNL flagrantly misrepresents the case, *Vigilant Ins. Co. v. Bear Stearns Companies, Inc.*, 2006 WL 118368 (N.Y.Sup. 2006) ("*Vigilant I*").  This Court relied on the *Vigilant I* opinion (among others) for the proposition that, under New York law, "'a party may not insure itself against the risk of having to return money that it had obtained

---

[2]All of the language employed by CNL to describe the choice-of-law agreement is cleverly crafted so as to leave the impression that it is a provision of the Twin City Policy.  The revelation that CNL is discussing a document signed years after issuance of the Twin City Policy is relegated to a one-sentence footnote.  (Doc. 227 at 12 n.8).

[3]CNL also failed to raise this argument, which is contrary to the rule of *lex loci contractus*, in its original motion and responses.

[4]As discussed *infra*, the case at issue was actually affirmed with modifications, rather than reversed.

improperly.'" (Doc. 210 at 9) (quoting *Vigilant I* at \*4).  On appeal, the court found that questions of fact existed as to whether certain sums paid out in settlement by Bear Stearns and labeled "disgorgement" actually represented improperly acquired funds.  *Vigilant Ins. Co. v. Bear Stearns Companies, Inc.*, 824 N.Y.S.2d 91, 94 (N.Y.A.D. 2006) ("*Vigilant II*").  The *Vigilant II* court therefore denied summary judgment to the insurance company on that point (though it affirmed the trial court's decision).  But the appellate court never questioned the lower court's statement of the law – i.e., that the risk of having to return ill-gotten gains was not insurable.  To the contrary, the appellate court implicitly affirmed it, pointing out that the allegations against the defendant in its case "were very different from those in *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 10 A.D.3d 528 [(N.Y.Sup. 2004)]," which the trial court had relied on in holding that the risk of being directed to return improperly acquired funds is not insurable.  As should be obvious to any second-year law student, this Court relied on *Vigilant I* for its specific *legal* point about insurability and disgorgement, not its specific *factual* point about the particular sums that Bear Stearns was purportedly disgorging.

CNL next complains that this Court looked at the ordinary meaning of the word "loss," a defined term in the Twin City Policy.  As the Court did not simply apply an "ordinary meaning" to this term, the argument has no merit.  While interpreting the defined term, the Court simply pointed out that "[t]he definition of the word 'loss' cannot be read to ignore the word 'loss' itself, since doing so would completely eviscerate the meaning of the word."  (Doc. 210 at 9) (quoting *Conseco, Inc. v. National Union Fire Ins. Co.*, 2002 WL 31961447 \*12 (Ind.App. 2002)).  This statement is in accord with the primary case cited on this point by CNL.  *See State Farm Fire & Cas. Ins. Co. v. Deni Ass. of Fla., Inc.*, 678 So. 2d 397, 403 (Fla. 4th DCA 1996) ("The purpose of

defining a contractual term is to make clear that the parties intend something *in addition to* the plain, ordinary meaning of the defined term.") (emphasis added).

CNL also contends that reconsideration is warranted because the Court failed to address a number of it arguments in its motion for partial summary judgment and in its responses to the Defendants' motions.  To the extent that these arguments were actually raised – and CNL includes at least one that has not been raised previously – the Court found them too lacking in merit to warrant discussion, and still does.  For example, CNL argues that the Court-approved settlement agreement in the underlying class action stated that the payments made pursuant to it were not disgorgement.  (Doc. 227 at 19).  Obviously, however, such an agreement is not binding on non-parties, including the Defendants and this Court.  CNL's remaining contentions are similarly baseless.

The Court has been lenient in allowing the parties to this case to file multiple motions for summary judgment, contrary to its normal practice.   Even given the size and complexity of this case, it has taken up a disproportionate share of this Court's attention.  The Court will not permit the parties to utilize motions for reconsideration as a vehicle to simply repeat their arguments or present ones they wish they had thought of the first time around.  Any further motions for reconsideration should be based on an intervening change in controlling law, new evidence, or a need to correct clear error or prevent manifest injustice.  *See, e.g., Burger King Corp. v. Ashland*

*Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D.Fla. 2002).  Any motions that fail to adhere to this requirement will result in sanctions.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the motion for reconsideration (Doc. 227) filed by the Plaintiff is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 16, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party