## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**CNL HOTELS & RESORTS, INC.,**

                **Plaintiff,**

**-vs-**                                         **Case No.  6:06-cv-324-Orl-31JGG**

**HOUSTON CASUALTY COMPANY, and
LANDMARK AMERICAN INSURANCE
COMPANY,**

                **Defendants.**

_____

## ORDER

This matter comes before the Court on the Motion for Entry of Dismissal Based on the

Court's 03/14/07 Ruling and For Entry of Final Judgment in Favor of Landmark (Doc. 214) filed

by Defendant Landmark American Insurance Company ("Landmark").  The Court has also

considered the response (Doc. 228) filed by the Plaintiff, CNL Hotels & Resorts, Inc. ("CNL"),

and a reply (Doc. 244) filed by Landmark..

### I.  Background

Landmark provided $10 million in insurance coverage to CNL.  This amount was in excess

of $20 million in coverage provided by Defendant Houston Casualty Company and former

Defendant Twin City Fire Insurance Company.  In its Amended Complaint (Doc. 57), CNL sought

to recover from these insurers approximately $48 million it paid in connection with an earlier

securities class action, broken down as follows: $35 million paid to settle the so-called "Purchaser

Class Claims"; $5.5 million paid to settle the so-called "Proxy Class Claims"; and $7.5 million in

defense costs and claims expenses.  On March 14, 2007, this Court entered an order (the "Order")

in which it concluded that the $35 million paid to settle the Purchaser Class Claims (the

"Settlement Amount") was not a "loss" as that term had been used in the insurers' policies and

was not insurable under applicable law.  (Doc. 210 at 16).  With that $35 million no longer at

issue, Landmark argues that it is entitled to dismissal and the entry of judgment pursuant to Rule

54(b) because CNL's claim cannot exceed the $20 million threshold that would implicate its

coverage.[1]

## II.    Analysis

The Court's conclusion regarding the insurability of the Settlement Amount was based on a

finding that the payment represented CNL "being compelled to return money that it wrongfully

appropriated."  (Doc. 210 at 16).  In response to the instant motion,[2] CNL contends that the

Settlement Amount resolved a number of claims in the underlying class action – Section 11 claims

against CNL, Section 11 and Section 15 claims against CNL's officers and directors, and Section

15 claims against CNL's advisor.  (Doc. 228 at 2).  CNL further contends that the other defendants

did not receive any money from the "purchaser class" plaintiffs.  As a result, any settlement

payments they would have made would *not* have represented the return of wrongfully appropriated

---

[1]Landmark and CNL disagree as to the amount of CNL's remaining claims.  Landmark calculates the sum at approximately $13 million – the $5.5 million in to settle the Proxy Class Claims plus $7.5 million in legal fees.  CNL contends that its defense costs now exceed $8.8 million, which would bring the total to $14.3 million.  (Doc. 228 at 3 n.2).  Because neither sum exceeds $20 million, the Court need not resolve the issue at this point.

[2]CNL initially argued against the instant motion on the grounds that it had filed a motion for reconsideration which, if granted, would result in its claims once again exceeding $20 million.  This argument was rendered moot by the Court's order of April 16, 2003 (Doc. 243), which denied the motion for reconsideration.

money and therefore could have been an insurable loss.  CNL argues that the Court must apportion

the Settlement Amount between the fraction it paid to settle the claims against CNL and the

fraction it paid to settle the claims against its officers, directors, and advisor.[3]  At least in theory,

that latter fraction, when combined with CNL's remaining claim, could exceed $20 million.

Because of this, CNL argues that Landmark must remain on the hook until the apportionment

occurs.

As CNL notes, this Court concluded in the Order that a settlement payment constituting

something *other* than disgorgement of the payor's own ill-gotten gains might be an insurable loss.

(Doc. 210 at 13).  Nevertheless, CNL's argument that a portion of the Settlement Amount falls

into this category fails for at least two reasons.  First, the Court has already held that the <u>entirety</u> of

the Settlement Amount was not an insurable loss.  (Doc. 210 at 16).  If CNL believed that a

portion of the Settlement Amount was a "loss" because it was paid on behalf of other defendants

or for other types of claims, it ought to have made that argument in response to the motions for

summary judgment that resulted in the Order.  CNL offers no excuse for its failure to do so.[4]

Second, the argument that CNL makes has been rejected by several of the decisions which

this Court relied upon in the Order:

---

[3]CNL contends that it paid those amounts on their behalf because the officers, directors, and advisor were entitled to indemnification by CNL.  (Doc. 228 at 11).  As Landmark points out (Doc. 244 at 2), CNL has not offered any evidence that its payment was in part a sort of pre-emptive indemnification.

[4] CNL cannot claim surprise, as it was put it on notice that the restitutionary character of the entire Settlement Amount was at issue.  Landmark requested a judgment "that the $35 million in restitution that [CNL] paid back to its shareholders to resolve the underlying securities class action: (1) does not constitute "Loss" as contemplated by the relevant policies and (2) is uninsurable under applicable law."  (Doc. 169 at 1).

Plaintiffs admit, however, that the individual Plantiffs have absolutely no liability to pay any portion of the Securities Litigation settlement, and they paid no attorneys fees or costs defending that lawsuit.  Since the individuals paid nothing and that case is concluded, the individual Plaintiffs cannot be held liable for the allegations set forth in that action, and thus it is immaterial that they were named as defendants under Section 11 at one time.

As a matter of law, the fact that directors and officers are named as defendants in a case seeking restitutionary damages does not change the restitutionary character of the settlement.  In *Level 3*, two directors and/or officers of the insured were named as defendants in the underlying action.  *Level 3 Communications, Inc. v. Federal Ins. Co.*, 1999 WL 675295, *5 (N.D.Ill. 1999).  The Seventh Circuit still found the nature of the settlement was "restitutionary."  *Level 3 Communications, Inc. v. Federal Ins. Co.*, 272 F.3d 908, 910 (7th Cir. 2001).  In this case it is undisputed that none of the Section 11 settlement was paid by the individual Plaintiffs.  By definition the settlement payment must represent ill-gotten gain of Conseco returned to those who paid Conseco.  No "Loss," therefore, was suffered by Conseco for the Section 11 portion of the Settlement.

*Conseco, Inc. v. National Union Fire Ins. Co.*, 2002 WL 31961447, at *16 (Ind. Cir. Ct. Dec. 31, 2002).  Nothing presented by CNL suggests that the situation in this case is appreciably different than the situations presented in *Conseco* or *Level 3*.

Thus, for both of these reasons, the Court finds that Landmark is entitled to the dismissal of all claims against it.  However, as a prerequisite to the entry of judgment pursuant to Rule 54(b), a district court must evaluate whether there is any just reason to delay the appeal of individual final judgments.  *Ebrahimi v. City of Huntsville*, 114 F.3d 162, 165 (11th Cir. 1997).  Rule 54(b) certifications are to be reserved for those unusual cases in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.  *Id.* at 166.  Although Landmark argues that there is no just reason to delay its exit from this case, Landmark does not address the issue of piecemeal appeals.  Without the benefit of argument on this point

-4-

from counsel for Landmark, the Court is forced to conclude that there is no reason to permit an immediate appeal here.

In consideration of the foregoing, the Motion for Entry of Dismissal Based on the Court's 03/14/07 Ruling and For Entry of Final Judgment in Favor of Landmark (Doc. 214) is **GRANTED IN PART AND DENIED IN PART**.  All pending claims against Defendant Landmark American Insurance Company are **DISMISSED**.  In all other respects, the motion is **DENIED**.  Furthermore, in light of this ruling, the following motions are **DENIED AS MOOT**: Landmark's Motion for Partial Summary Judgment on its Eleventh Affirmative Defense (Doc. 178); CNL's Motion for Summary Judgment on Landmark's Eighth Affirmative Defense (Doc. 185); CNL's Motion for Summary Judgment on Landmark's Affirmative Defenses That Lack Factual Support (Doc. 217); and CNL's Motion for Summary Judgment on Landmark's Ninth Affirmative Defense (Doc. 218).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 26, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party