**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CNL HOTELS & RESORTS, INC.,**

        **Plaintiff,**

-vs-                                                                                      **Case No. 6:06-cv-324-Orl-31JGG**

**HOUSTON CASUALTY COMPANY,**

        **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 220) filed by Defendant Houston Casualty Company ("HCC") and the response (Doc. 246) filed by the Plaintiff, CNL Hotels & Resorts, Inc. ("CNL").

**I.      Background**

In August and September 2004, two class action suits were filed against CNL. Those suits were subsequently consolidated in a class action styled *In re CNL Hotels & Resorts, Inc.*, Case No. 6:04-cv-1231-Orl-31KRS (the "Class Action"). The plaintiffs in that case alleged that CNL violated the securities laws in connection with stock offerings and a proposed purchase of the company that advised it. CNL settled the Class Action by, among other things, agreeing to make payments totaling $40.5 million to the two classes. This Court approved the settlement and closed the Class Action in August, 2006.

The original defendants in this action – HCC, Landmark American Insurance Company ("Landmark"), and Twin City Fire Insurance Company ("Twin City") – each provided $10 million

in insurance coverage to CNL. Twin City was the primary insurer, followed by HCC, with Landmark in the "uppermost" excess position. In this suit, CNL seeks to recover the $40.5 million it paid plus $8.8 million in defense costs and claims expenses it incurred. (Doc. 88).

Twin City settled with CNL and was dismissed from this case on January 23, 2007. (Doc. 167). On March 14, 2007, the Court concluded that $35 million of the $40.5 million was restitutionary and therefore not a "loss" as that term had been used in the insurers' policies and was not insurable under applicable law. (Doc. 210 at 16). Because CNL's remaining claims could not exceed the $20 million threshold that would implicate Landmark's coverage, the suit was dismissed as to Landmark on April 26, 2007. (Doc. 250). HCC now argues that a particular policy endorsement – Endorsement 17 – excludes the remaining $5.5 million payment in the Class Action from coverage.

**II.   Standards**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Analysis**

CNL was managed and advised by CNL Hospitality Corp. ("CHC"), which itself was owned and managed by the primary decisionmakers at CNL. In 2004, CNL sought shareholder approval for a merger with CHC in which all outstanding CHC stock would be exchanged for approximately $300 million in stock and cash. CNL gained approval for the merger by way of a proxy statement (the "Proxy").

Before the merger could be consummated, plans for a related public offering of CNL stock fell through. Shortly thereafter, two separate but overlapping classes of investors filed suit against CNL, alleging securities law violations. Members of the Purchaser Class claimed to have been misled by CNL into buying CNL shares. Members of the Proxy Class claimed to have been misled into approving the (still-pending) merger:

> By the Proxy, Defendant CNL, the Individual Defendants and [CHC] sought and received the approval of the Merger whereby CNL Hotels would pay approximately $300 million for an Advisor that was worth substantially less. The Proxy contains materially false and misleading statements concerning the most fundamental, material aspects of the Proxy – the basis for placing this exorbitant value on [CHC].

(Doc. 211-2 at 94-95 in 6:04-cv-1231) (the "Class Action Complaint").

CNL eventually settled both classes' claims. As part of the settlement with the Proxy Class, CNL agreed to reduce the price to be paid for CHC's stock by approximately $200 million, agreed to reduce certain fees owed to CHC by CNL, and paid $5.5 million in attorney's fees to counsel for the Proxy Class (the "Proxy Class Payment").

Twin City provided the primary policy (the "Twin City Policy") at issue in this suit. HCC providing a following form policy that was "subject to the same insuring clauses, definitions, terms, conditions, exclusions and other provisions as those set forth in the [Twin City Policy]". (Doc. 220-5 at 2). HCC contends that coverage for the Proxy Counsel Payment is excluded by Endorsement 17 of the Twin City Policy, which amends the definition of "Loss" and provides in pertinent part:

> In the event of a Claim alleging that the price or consideration paid or proposed to be paid in any transaction involving all or substantially all the ownership interest in or assets of an entity is inadequate or excessive, Loss with respect to such Claim shall not include any amount of damages, settlements or judgments representing the amount by which such price or consideration is effectively increased or decreased, or to any plaintiff's counsel fees and costs arising out of such Claim; provided, however, that this paragraph shall not apply to Claims Expenses incurred in the defense or appeal of such Claim.

(Doc. 220-4 at 4).

As the quoted passage from the Class Action Complaint demonstrates, the claim of the Proxy Class was founded on an allegation that "the price or consideration paid or proposed to be

paid [for] all or substantially the ownership interest in [CHC]" was excessive. Nonetheless, CNL offers three arguments as to why Endorsement 17 does not exclude the $5.5 million Proxy Class Payment from coverage.[1]

### A.   Multiple bases

According to CNL, "[b]oth this Court and the parties to the underlying settlement have acknowledged that the $5.5 million payment for Proxy Class fees included payment for work that was not related to the Claim for excessive consideration." (Doc. 246 at 4). CNL is referring to this passage from the Court's order approving the settlement in the Class Action:

> 24.   On account of the benefits conferred by virtue of the Settlement with respect to the Proxy Class and derivative claims, and in particular the benefits resulting from, without limitation, the modifications to the advisor fees, the revised merger terms, and the provisions relating to corporate governance as set forth in the Stipulation, Plaintiffs' Counsel are hereby awarded fees and reimbursable expenses in the aggregate total amount of $5,500,000 to be paid by CHR to Lead Litigation Counsel (on behalf of all Plaintiffs' Counsel) within ten (10) days after the Effective Date.

(Doc. 267 at 8 in 6:04-cv-1231 at 8). According to CNL, this demonstrates that the Proxy Class Payment "was based on at least three separate factors: benefits resulting from the modifications to the advisor fees; the revised merger terms; and provisions relating to corporate governance." (Doc. 246 at 2). Because of this, CNL argues that there were at least three bases for the $5.5 million payment, and two of them – the advisor fee modifications, and the corporate governance

---

[1] Under New York law, which the Court has found to be applicable to the interpretation of the Twin City Policy (Doc. 210), the insurer bears the burden of demonstrating that a claim falls within the exclusions of an insurance policy. *Neuwirth v. Blue Cross & Blue Shield of Greater New York*, 465 N.E.2d 353, 354 (N.Y. 1984).

-5-

provisions – have nothing to do with a claim based on allegedly excessive consideration. (Doc. 246 at 5-6).

CNL is incorrect. The Court has not acknowledged that any part of the $5.5 million payment was for anything not related to the claim that CNL proposed to grossly overpay for CHC. To the contrary, the quoted passage demonstrates that the $5.5 million was based entirely upon the excessive consideration claim. The fact that counsel for the Proxy Class achieved *benefits* beyond a simple reduction in the proposed purchase price does not alter the *basis* for the claim.

**B.     Additional allegations**

CNL contends that many of the Proxy Class allegations focus on alleged misstatements in CNL's securities filings regarding business income. (Doc. 246 at 6). CNL argues that these allegations about misstatements are something other than allegations that the consideration to be paid for CHC was excessive. CNL argues that these allegations fall outside the scope of Endorsement 17. (Doc. 246 at 6-7).

CNL does not provide a citation to such allegations, and therefore the Court cannot determine whether CNL's assessment of them is well-founded. Nonetheless, allegations regarding misstatements about business income would be relevant to the Proxy Class claim, as they would support the claim that CNL was overpaying for CHC. On the other hand, CNL offers no explanation as to how such allegations could have constituted a separate claim for relief for the Proxy Class – i.e., something other than a claim that CHC's price tag was excessive. As such, CNL has not shown that such allegations would alter the basis for the Proxy Class claim in any relevant way.

### C. Allocation of settlement payment

In its settlement with Twin City, CNL received $9.5 million. According to CNL, under the agreement the money was allocated as follows: $700,000 toward the $35 million paid to the Purchaser Class; $3.3 million toward CNL's defense costs and claims expenses; and $5.5 million to the Proxy Class Payment. CNL argues that this allocation constitutes an acknowledgment by Twin City that the Proxy Class Payment was a covered expense, which creates a genuine issue of material fact regarding the applicability of Endorsement 17. (Doc. 246 at 8). In the alternative, CNL argues that Twin City has already reimbursed it for the entire Proxy Class Payment, resulting in HCC facing liability instead for its remaining $5.5 million in defense costs (to which Endorsement 17 would not apply). (Doc. 246 at 8).

CNL offers little explanation and no legal authority in support of either argument. As this Court has previously noted, the terms of the settlement agreement do not bind anyone other than CNL and Twin City. And Twin City has no authority to bind HCC to an "acknowledgment" that something is a covered expense. *See, e.g.*, *Manuel v. Luckett*, 577 So. 2d 203, 209 (La. Ct. App. 1991) (excess insurer not bound by primary insurer's determination that particular exclusion applied to plaintiff's claim where excess insurer had separate contractual relationship with plaintiff and had not waived its right to separately determine scope of its coverage). The agreement between CNL and Twin City to treat some obligations but not others as having been reimbursed is simply not relevant to the issue of whether Endorsement 17 applies to the Proxy Class Payment.

### IV. Conclusion

HCC has shown that the $5.5 million Proxy Class Payment arises out a claim that the consideration to be paid for CHC was excessive. CNL has failed to demonstrate the existence of

any genuine issue of material fact as to whether Endorsement 17 applies to the Proxy Class Payment.  In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 220) filed by Defendant Houston Casualty Company is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 8, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party